Filed 8/27/24

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| T.M.,<br><br>    Petitioner,<br><br>v.<br><br><br>THE SUPERIOR COURT OF<br>CONTRA COSTA COUNTY,<br><br>    Respondent;<br><br><br>THE PEOPLE<br>    Real Party in Interest. | A169823<br><br><br>(Contra Costa County Super. Ct.<br> No. J23-00247) |

In a juvenile wardship proceeding, counsel for the minor declared a doubt as to the minor's competency to stand trial. The juvenile court suspended the wardship proceedings and referred the minor for a competency evaluation. The court's protocol required the disclosure of the minor's mental health records to the expert appointed by the court to evaluate the minor's competency. The minor objected to this requirement on the ground that those records are protected from disclosure by the psychotherapist-patient

1

privilege. (Evid. Code, § 1014.)[1] The court overruled the objection and ordered the disclosure of the minor's mental health records to the court-appointed expert. The minor then filed this writ petition, challenging the compelled disclosure of his mental health records, and we issued an order to show cause (OSC). We now find that section 1016 renders the psychotherapist-patient privilege inapplicable in any juvenile competency proceeding initiated after a minor's counsel declares a doubt as to the minor's competency. We therefore deny the petition.

## BACKGROUND

The Contra Costa County District Attorney's Office (District Attorney) filed a juvenile wardship petition against petitioner T.M. (Welf. & Inst. Code, § 602, subd. (a).) The petition alleged that T.M., who was 14 at the time, committed: (1) sodomy by use of force on a minor under 14 years of age (Pen. Code, § 286, subd. (c)(2)(B); counts 1, 5, 7, 9); (2) forcible lewd acts upon a child (*id.*, § 288, subd. (b)(1); counts 2, 6, 10); (3) attempted sodomy by use of force on a minor under 14 years of age (*id.*, §§ 286, subd. (c)(2)(B) & 664; counts 3, 4); and (4) criminal threats (*id.*, § 422; count 8).

Over seven months after the filing of the petition, T.M.'s counsel declared a doubt as to T.M.'s competency. Following the Contra Costa County juvenile competency protocol (Protocol), the juvenile court suspended the wardship proceeding and transferred T.M.'s competency determination "to the court designated to handle juvenile competency proceedings."

Under the Protocol, the designated court selects an expert evaluator who "possess[es] qualifications consistent with [Welfare and Institutions Code] [s]ection 709[, subdivision] (b)(2) and [California Rules of Court,] [r]ule

---

[1] All further statutory references are to the Evidence Code unless otherwise indicated.

2

5.645(b)."  The probation officer then "gather[s] the documents necessary to provide to the evaluator, including but not limited to: all petitions, police reports, probation reports, prior delinquency history, and school records," and "forward[s]" those documents "to the evaluator."  "Pursuant to [Welfare and Institutions Code] [s]ection[] 709[, subdivisions] (b)(3) and (b)(5), the medical/mental health treatment provider of the service shall [also] forward their records to the evaluator."  (Boldface omitted.)  Finally, the Protocol prohibits the use of any "[s]tatements made to the appointed expert during the youth's competency evaluation . . . , and any fruits of these statements, . . . in any other hearing against the youth in either juvenile or adult court."

T.M. objected in writing to the compelled disclosure of his mental health records under the Protocol.[2]  According to T.M., before December 2021, the Protocol made defense counsel " 'responsible for releasing any medical or mental health records they wish[ed] to have made a part of the evaluation.' "  But the Protocol was amended in 2021 to compel the disclosure of a minor's mental health records to the expert evaluator.  He contended that this compelled disclosure was prohibited by certain privacy statutes, the California Constitution (Cal. Const., art. I, § 1 [right to privacy]), and the psychotherapist-patient privilege (§ 1014).  The District Attorney did not file an opposition, choosing to rely solely on the Protocol.

The juvenile court overruled T.M.'s objection.  According to the court, Welfare and Institutions Code section 709 "is clear on its face" and permits the compelled disclosure of " 'all of the available records provided.' "  The court further concluded that section 1025 "clearly states that there's no

_____

[2] T.M. also objected to the evaluation of his dangerousness under the Protocol but does not appeal from the juvenile court's ruling on that objection.

3

[psychotherapist-patient] privilege in a proceeding to establish competence." Finally, the court rejected T.M.'s request for a stay so he could seek appellate review.[3] Upon appointing an expert to evaluate T.M.'s competency to stand trial, the court ordered "that any entity or person in possession and control of responsive records shall make available to the expert any and all available records described in [Welfare and Institutions Code] [s]ection 709[, subdivision] (b)(3) in their possession and control pertaining to" T.M.

T.M. filed this writ petition and request for stay (writ petition or petition), challenging the disclosure of his mental health records. In the petition, T.M. contended that those records are protected from disclosure by the psychotherapist-patient privilege (§ 1014)—which was not abrogated by Welfare and Institutions Code section 709. He further contended that the exception to the privilege codified in section 1025 did not apply.

We stayed the portion of the juvenile court's order "requiring the disclosure to the appointed expert of 'any and all available records described in [Welfare and Institutions Code] [s]ection 709[, subdivision] (b)(3) in their possession and control pertaining to the Minor' " and requested further briefing from the parties.

On the same day we issued the stay, the juvenile court received the court-appointed expert's written report evaluating T.M.'s competency to stand trial. Because of our order, the court did not review the report to determine if the expert "received and/or relied on any privileged material in preparing the report and [did] not distribute[] the report to the parties . . . ."

After reviewing the requested briefing, we issued an OSC. In a subsequent order, we asked for additional briefing addressing "the following

---

[3] In a subsequent hearing regarding the appointment of the expert evaluator, the juvenile court denied T.M.'s renewed request for a stay.

4

questions: [¶] 1. In light of . . . section 1023, does the psychotherapist-patient privilege apply in adult competency proceedings under Chapter 6 [of Title 10 of Part 2] of the Penal Code? And if so, when? [¶] 2. Assuming for purposes of argument that the psychotherapist-patient privilege does not apply in certain adult competency proceedings in light of . . . section 1023, does . . . section 1016 preclude the application of the psychotherapist-patient privilege in juvenile competency proceedings under Welfare & Institutions Code section 709 (see Cal. Law [Revision] Com. com., 29B pt. 3B West's Ann. Evid. Code (2009 ed.) foll. § 1023, p. 43 ['Section 1023 is included to make it clear that the psychotherapist-patient privilege does not apply when the defendant raises the issue of his sanity at the time of trial. *The section is probably unnecessary because the exception provided by Section 1016 is broad enough to cover this situation*,' italics added])? And if so, when?"

## DISCUSSION

### I.

### Juvenile Competency Proceedings

"The constitutional right to due process of law prohibits the trial of a mentally incompetent criminal defendant. [Citations.] Due process principles further require trial courts to employ procedures to guard against the trial of an incompetent defendant." (*In re R.V.* (2015) 61 Cal.4th 181, 188 (*R.V.*).) In adult criminal proceedings, chapter 6 of title 10 of part 2 of the Penal Code (Pen. Code, §§ 1367–1376) (chapter 6) describes the procedure for determining whether a defendant is competent to stand trial. Chapter 6 does not, however, apply in juvenile proceedings. (*R.V.*, at p. 189.)

A minor facing the potential loss of liberty has the same right to due process as a defendant in an adult criminal proceeding. (*In re Gault* (1967)

5

387 U.S. 1, 30 (*Gault*), overruled on other grounds by *Allen v. Illinois* (1986) 478 U.S. 364, 372-273.)  Thus, a "minor who is the subject of a wardship petition under Welfare and Institutions Code section 601 or section 602 has, like an adult facing criminal prosecution, a due process right not to be tried while mentally incompetent."  (*R.V.*, *supra*, 61 Cal.4th at p. 185, fn. omitted.)

Guided by this principle, the Court of Appeal in *James H. v. Superior Court* (1978) 77 Cal.App.3d 169, 173—174 (*James H.*) held that a minor has the right to "effective counsel" in a juvenile wardship proceeding.  This, in turn, means that a minor has the right to "a hearing as to his competency to cooperate with that counsel."  (*Id.* at p. 174.)  The failure to afford the minor that hearing "deprives [him] of his constitutional right to a fair trial."  (*Id.* at p. 175.)

Acknowledging "the absence of [then-]existing statutory procedures for juvenile competency determinations" (*R.V.*, *supra*, 61 Cal.4th at p. 189), the Court of Appeal in *James H.* concluded that juvenile courts "have the inherent power to create new forms of procedure" for those determinations (*James H.*, *supra*, 77 Cal.App.3d at pp. 175).  At the time *James H.* was decided, "juvenile courts appear to have been making use of adult competency procedures in wardship proceedings . . . ."  (*R.V.*, at p. 189.)  Consistent with this practice, the court in *James H.* "fashioned a Penal Code section 1368-like procedure for juvenile courts making competency determinations."  (*R.V.*, at p. 190).  It did not, however, determine whether certain features of competency determinations in adult criminal proceedings—such as "the presumption of competency or burden of proof"—applied in juvenile wardship proceedings.  (*Ibid.*)

6

"In 1999, the Judicial Council added former rule 1498 to the California Rules of Court in order to establish statewide procedures for conducting a hearing to determine the competency of a juvenile subject to a wardship proceeding . . . .  The rule was intended to, and largely did, conform to the procedures described in the *James H.* decision . . . ."  (*R.V.*, *supra*, 61 Cal.4th at p. 190.)

A decade later, "the Legislature enacted [Welfare and Institutions Code] section 709, codifying some of the standards and procedures that had been established in the rules of court, and modifying or adding others consistently with the holdings in" various appellate decisions.  (*R.V.*, *supra*, 61 Cal.4th at pp. 190–191.)  Under Welfare and Institutions Code section 709, subdivision (a)(2), "A minor is incompetent . . . if the minor lacks sufficient present ability to consult with counsel and assist in preparing the minor's defense with a reasonable degree of rational understanding, or lacks a rational as well as factual understanding of the nature of the charges or proceedings against them.  Incompetency may result from the presence of any condition or conditions, including, but not limited to, mental illness, mental disorder, developmental disability, or developmental immaturity."

Both "[t]he minor's counsel or the court may express a doubt as to the minor's competency."  (Welf. & Inst. Code, § 709, subd. (a)(3).)  "If the court has a doubt that a minor who is subject to any juvenile proceedings is competent, the court shall suspend all proceedings . . . ."  (*Id.*, subd. (a)(1).)  "The question of the minor's competency shall be determined at an evidentiary hearing unless there is a stipulation or submission by the parties on the findings of the expert that the minor is incompetent."  (*Id.*, subd. (c).)

7

A minor is presumed to be competent, "unless it is proven by a preponderance of the evidence that the minor is mentally incompetent." (*Ibid.*)

Welfare and Institutions Code section 709 also describes the process to be used by a juvenile court to evaluate a minor's competency to stand trial. After suspending all further proceedings, the court must appoint an expert evaluator (Welf. & Inst. Code, § 709, subd. (b)(1)), who has "expertise in child and adolescent development and forensic evaluation of juveniles for purposes of adjudicating competency," is "familiar with competency standards and accepted criteria used in evaluating juvenile competency," has "received training in conducting juvenile competency evaluations," and is "familiar with competency remediation for the condition or conditions affecting competence in the particular case" (*id.*, subd. (b)(2)).

The court-appointed expert must "personally interview the minor" and "consult with the minor's counsel and any other person who has provided information to the court regarding the minor's lack of competency." (Welf. & Inst. Code, § 709, subd. (b)(3).) The expert must also "review all of the available records provided, including, but not limited to . . . mental health . . . records, and any other relevant information that is available." (*Ibid.*) But "[i]f any information is unavailable to the expert, the expert shall note . . . the efforts to obtain that information." (*Ibid.*) And "[s]tatements made to the appointed expert during the minor's competency evaluation . . . , and any fruits of these statements, shall not be used in any other hearing against the minor in either juvenile or adult court." (*Id.*, subd. (b)(5).)

After completing the competency evaluation, the expert must prepare a "written report." (Welf. & Inst. Code, § 709, subd. (b)(3).) In that report, the expert must, among other things, "opine whether the minor has the sufficient

present ability to consult with the minor's counsel with a reasonable degree of rational understanding and whether the minor has a rational and factual understanding of the proceedings against them" and "state the basis for these conclusions." (*Ibid.*)

Finally, Welfare and Institutions Code section 709, subdivision (b)(4) tasks the Judicial Council with "develop[ing] and adopt[ing] rules for the implementation of the . . . requirements in this subdivision."[4]  To this end, the Judicial Council has adopted rule 5.645 of the California Rules of Court. As relevant here, that rule requires that: (1) the court-appointed expert "review all the records provided as required by [Welfare and Institutions Code] section 709" (Cal. Rules of Court, rule 5.645(d)(1)); and (2) "[t]he written protocol" established by the juvenile court "include a description of the process for obtaining and providing the records to the expert to review, including who will obtain and provide the records to the expert" (*id.*, rule 5.645(d)(2)).

## II.

### Psychotherapist-patient Privilege

Section 1014 codifies the psychotherapist-patient privilege.  It states in relevant part that a "patient . . . has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist . . . ."  The privilege protects "information, including information obtained by an examination of the patient, transmitted

---

[4] Welfare and Institutions Code section 709, subdivision (i) also requires that each juvenile court, together with other interested stakeholders, "develop a written protocol describing the competency process and a program to ensure that minors who are found incompetent receive appropriate remediation services."

9

between a patient and his psychotherapist in the course of that relationship and in confidence" (§ 1012), and "applies in both civil and criminal cases" (*Story v. Superior Court* (2003) 109 Cal.App.4th 1007, 1014 (*Story*)).

The psychotherapist-patient privilege recognizes "that an environment of confidentiality of treatment is vitally important to the successful operation of psychotherapy." (*In re Lifschutz* (1970) 2 Cal.3d 415, 422 (*Lifschutz*).) "Confidential communications between psychotherapist and patient are protected in order to encourage those who may pose a threat to themselves or to others, because of some mental or emotional disturbance, to seek professional assistance." (*People v. Stritzinger* (1983) 34 Cal.3d 505, 511 (*Stritzinger*).) The privilege is "an aspect of the patient's constitutional right to privacy."[5] (*Ibid.*) As a result, the privilege " 'is to be liberally construed in favor of the patient' " (*People v. Yang* (2021) 67 Cal.App.5th 1, 47 (*Yang*)), and exceptions to the privilege are to be "narrowly construed" (*Story*, *supra*, 109 Cal.App.4th at p. 1014). "Once the claimant [of the privilege] establishes the preliminary facts of a psychotherapist-patient relationship" (*id.* at p. 1015),

---

[5] More recently, the California Supreme Court has questioned the federal constitutional basis for the psychotherapist-patient privilege. In *People v. Gonzales* (2013) 56 Cal.4th 353, 384 (*Gonzales*), our high court explained: "Although over 40 years have elapsed since our decision in *Lifschutz*, the United States Supreme Court itself has not yet definitively determined whether the federal Constitution embodies even a general right of informational privacy." (Italics omitted.) It therefore assumed, "*without deciding*," that such a right exists. (*Gonzales*, at p. 385, original italics.) Because no court has overruled the relevant holdings of *Lifschutz* and *Stritzinger* and because the California Constitution protects the right to informational privacy (see *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 35 ["Informational privacy is the core value furthered by" article I, section 1 of the California Constitution]), we too will assume that the privilege has a constitutional basis (see *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455).

"[t]he prosecution bears the burden of establishing a statutory exception applies" (*Yang*, at p. 47).

Nevertheless, " 'the psychotherapist-patient privilege is not absolute.' " (*Fish v. Superior Court* (2019) 42 Cal.App.5th 811, 818.)  The Legislature has "adopted numerous explicit statutory exceptions to the privilege that limit the circumstances in which the privilege is applicable." (*Gonzales*, *supra*, 56 Cal.4th at p. 372.)  These exceptions establish circumstances where the policy favoring the protection of psychotherapist-patient communications must yield to other important state interests.  (See, e.g., *Lifschutz*, *supra*, 2 Cal.3d at p. 432 [psychotherapist-patient privilege may yield to the "state interest of facilitating the ascertainment of truth in connection with legal proceedings"]; *McGovern v. BHC Fremont Hospital, Inc.* (2022) 87 Cal.App.5th 181, 198 [psychotherapist-patient privilege may yield to the state interest in " 'avert[ing] danger to others' "].)

### III.
### Mootness

The People contend the petition is moot because the court-appointed expert sent his report to the juvenile court on the same day we issued the stay.  But the completion of that report does not preclude us from granting *any* relief.  (See *Hernandez-Valenzuela v. Superior Court* (2022) 75 Cal.App.5th 1108, 1121 (*Hernandez-Valenzuela*) [" 'The pivotal question in determining if a case is moot is . . . whether the court can grant the plaintiff any effectual relief' "].)  Although we cannot undo any disclosure of privileged communications to that expert, we may still remand for a report from an expert who has not seen or considered any such communications.

The People also contend the petition is moot because there is no evidence that the expert received or considered any privileged

11

communications. According to the People, T.M. failed to meet his burden of showing that the psychotherapist-patient privilege is implicated here. But the People forfeited this claim "by failing to raise it below." (*In re David H.* (2008) 165 Cal.App.4th 1626, 1637.) We must therefore assume that privileged communications were disclosed to the expert pursuant to the juvenile court's order.

Finally, even if the petition is moot, we would not dismiss it. The issue before us—the applicability of the psychotherapist-patient privilege in juvenile competency proceedings—is an issue "of significant public interest" that is "likely to recur." (*Hernandez-Valenzuela, supra,* 75 Cal.App.5th at p. 1122.) We therefore resolve it now.

## IV.

## Applicability of the Psychotherapist-patient Privilege in Juvenile Competency Proceedings.

The parties disagree over whether a statutory exception to the psychotherapist-patient privilege applies here.[6] Resolving that disagreement in part, we find that section 1016 precludes the application of the privilege in

---

[6] We reject the People's suggestion in their response that section 1016 does not apply because the competency evaluation is not a proceeding. (See § 910 ["the provisions of this division apply in all proceedings"].) A juvenile competency proceeding under Welfare and Institutions Code section 709 is undoubtedly a proceeding subject to the Evidence Code. (See *People v. Lawley* (2002) 27 Cal.4th 102, 131 ["Although it arises in the context of a criminal trial, a competency hearing is a special proceeding"].) Because the competency evaluation is part of that proceeding, the privileges established by the Evidence Code apply absent an applicable statutory exception. (See *Lemelle v. Superior Court* (1978) 77 Cal.App.3d 148, 161—162 [psychotherapist-patient privilege applies absent a statutory exception].)

this competency proceeding because T.M., through his counsel, tendered the issue of his competency to stand trial to the juvenile court.[7]

Section 1016, known as "the patient-litigant exception to the psychotherapist-patient privilege" (*Lifschutz*, *supra*, 2 Cal.3d at p. 433), states in relevant part: "There is no [psychotherapist-patient] privilege . . . as to a communication relevant to an issue concerning the mental or emotional condition of the patient if such issue *has been tendered by*:  [¶]  (a) *The patient . . . .*" (§ 1016, italics added.)  T.M.'s competency to stand trial undoubtedly presents an "issue concerning [his] mental or emotional condition . . . ." (*Ibid.*; see Welf. & Inst. Code, § 709, subd. (a)(2) ["Incompetency may result from the presence of . . . mental illness, mental disorder, developmental disability, or developmental immaturity"].)  Indeed, T.M. does not argue otherwise.  Thus, in determining whether section 1016 precludes the application of the psychotherapist-patient privilege in this competency proceeding, the sole issue is whether that issue "has been tendered by" T.M.

In resolving this issue, " 'we are guided by familiar canons of statutory construction. "[I]n construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law." [Citation.]  In determining that intent, we first examine the words of the respective statutes: "If there is no ambiguity in the language of the statute, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' [Citation.]  'Where the statute is clear, courts will not

---

[7] Because we find that section 1016 precludes the application of the psychotherapist-patient privilege here, we do not address the other potential exceptions raised by the People, including Welfare and Institutions Code section 709, subdivision (b)(3) and Evidence Code sections 1012 and 1025.

"interpret away clear language in favor of an ambiguity that does not exist."
[Citation.]' " [Citation.] If, however, the terms of a statute provide no
definitive answer, then courts may resort to extrinsic sources, including the
ostensible objects to be achieved . . . .' " (*People v. Olay* (2023) 98 Cal.App.5th
60, 65 (*Olay*), quoting *People v. Coronado* (1995) 12 Cal.4th 145, 151.) Courts
may also "examine the context in which the [statutory] language appears,
adopting the construction that best harmonizes the statute . . . with related
statutes" (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183,
192—193, internal quotations omitted), as well as consider "public policy" (*Big
Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1153,
internal quotations omitted). The end goal is to "select the construction that
comports most closely with the apparent intent of the Legislature, with a
view to promoting rather than defeating the general purpose of the statute,
and avoid an interpretation that would lead to absurd consequences." (*Olay*,
at p. 65, internal quotations omitted.)

Applying these canons, we conclude that the issue of T.M.'s competency
was "tendered by" T.M. for purposes of section 1016. Under its "plain and
commonsense meaning" (*Davis v. Fresno Unified School Dist.* (2023)
14 Cal.5th 671, 687, internal quotations omitted), the word "tender" means
"to present for acceptance" or to "offer." (<https://www.merriam-
webster.com/dictionary/tender#dictionary-entry-2> [as of Aug. 27, 2024; see
also (<https://www.dictionary.com/browse/tender#american-tender-1-verb-
used-with-object> [as of Aug. 27, 2024] ["tender" means "to present formally
for acceptance," to "make formal offer of," or "to offer or proffer"].) By
declaring a doubt as to T.M.'s competency, T.M.'s counsel undoubtedly
"tendered" the issue of his mental or emotional condition by presenting or

offering that issue to the juvenile court for its consideration.  (§ 1016.)  And once T.M.'s counsel did so, the issue is deemed to have been tendered by T.M. himself.  (See *Baqleh v. Superior Court* (2002) 100 Cal.App.4th 478, 500 & fn. 6 (*Baqleh*) [the petitioner himself "raised the issue of [his] competency to stand trial" when his counsel declared a doubt as to his competency].)

That T.M.'s counsel, rather than T.M. himself, raised the issue of his competency to stand trial does not render section 1016 inapplicable.  "When evidence indicates that the defendant may be [incompetent] it should be assumed that he is unable to act in his own best interests."  (*People v. Hill* (1967) 67 Cal.2d 105, 115, fn. 4 (*Hill*).)  "[I]t is [therefore] contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently " 'waive' " his right to have the court determine his capacity to stand trial."  (*Pate v. Robinson* (1966) 383 U.S. 375, 384 (*Pate*).)  Indeed, it would be absurd to expect an accused who "lacks a rational" and "factual understanding of the nature of the charges or proceedings" or lacks the "reasonable degree of rational understanding" needed to assist in his defense (Welf. & Inst. Code, § 709, subd. (a)(2)), to declare a doubt as to his *own* competency (see *Olay*, *supra*, 98 Cal.App.5th at p. 65 [must avoid interpretations that " ' "would lead to absurd consequences" ' "]).  Thus, the issue of an accused's competency, as a practical matter, must *always* be tendered by someone other than the accused himself.  As a result, "[w]e cannot accept the suggestion that an accused whose lawyer has doubts about his or her competency to stand trial and fulfills the legal and ethical responsibility to call such doubts to the attention of the court can be deemed not to have himself or herself raised the issue of competency . . . ."  (*Baqleh*, *supra*, 100 Cal.App.4th at p. 500, fn. 6.)

15

That a minor " 'does not voluntarily place his competency in issue' " also makes no difference for purposes of section 1016.  Competency proceedings seek "*only* to protect the accused." (*People v. Bye* (1981) 116 Cal.App.3d 569, 577 (*Bye*), original italics.)  This is because "[s]ociety's greater concern . . . is that *no defendant* shall ever be convicted of a criminal charge when he was incapable of understanding or assisting during the trial of his alleged guilt." (*Ibid.*, original italics.)  "Even when a defendant resists this protection by opposing the evidence of incompetency, it would be unfair to deny him the benefit of treatment for his condition before subjecting him to a potential loss of life or liberty in the criminal proceeding." (*Id.* at p. 576.)  Thus, our competency laws are designed to protect the incompetent minor from himself.  Consistent with this purpose, those laws recognize that the minor's counsel, who has a legal and ethical duty to act in the minor's best interests, is in the best position to raise the issue of competency in the minor's stead.  (See Welf. & Inst. Code, § 709, subd. (a)(3) [expressly authorizing "[t]he minor's counsel" to "express a doubt as to the minor's competency"].)  We therefore hold that T.M.'s counsel is deemed to be T.M. for purposes of section 1016 when she "tendered" the issue of T.M.'s competency to the juvenile court.

Our holding comports with the "ostensible objects to be achieved" by the patient-litigant exception. (*Olay, supra*, 98 Cal.App.5th at p. 65, internal quotations omitted.)  Through a declaration of doubt, a minor "seeks to avoid the penal consequences of" his criminal conduct "by establishing his incompetency." (*Bye, supra*, 116 Cal.App.3d at p. 573; see, e.g., Welf. & Inst. Code, § 709, subds. (f) ["If the minor is found to be incompetent and the petition contains only misdemeanor offenses, the petition shall be dismissed"]

16

& (h)(4) ["If the court finds that the minor [charged with a felony offense] will not achieve competency . . . , the court shall dismiss the petition"].)[8]  Because a minor in a juvenile wardship proceeding may avoid culpability when his or her counsel claims incompetence, the minor, "in all fairness, . . . should not be permitted to establish [that] claim while simultaneously foreclosing inquiry into relevant matters." (*Lifschutz, supra*, 2 Cal.3d at p. 433.)  This "represents" the "judgment" made by the Legislature when it enacted section 1016.  (*Lifschutz,* at p. 433.)

Reading section 1016 in light of section 1023, another statutory exception to the psychotherapist-patient privilege, confirms that the privilege does not apply here.  (See *People v. Sinohui* (2002) 28 Cal.4th 205, 213 (*Sinohui*) [construing the spousal testimony privilege "in light of other exceptions to" that "privilege"].)  Under section 1023, "[t]here is no [psychotherapist-patient] privilege . . . in a proceeding under [chapter 6] initiated at the request of the defendant in a criminal action to determine his sanity"—i.e., his competency to stand trial.[9]  The Legislature adopted section

---

[8] For an incompetent minor who does not achieve competency within one year and has been charged with a felony offense (Welf. & Inst. Code, § 709, subd. (h)(3)), the juvenile court may refer that minor for evaluation for confinement under the Lanterman-Petris-Short Act or Welfare and Institutions Code section 6550 et seq. (Welf. & Inst. Code, § 709, subd. (h)(4)).

[9] When the Legislature enacted section 1023 in 1965, the adult competency statutes used the terms "insane," "sanity," and "insanity."  (See, e.g., former Pen. Code, §§ 1367 ["A person cannot be tried, adjudged to punishment, or punished for a public offense, while he is *insane*" (italics added)] & 1368 [referencing the defendant's "*sanity*" and "the issue of *insanity*" (italics added)].)  In 1974, however, the Legislature substituted the phrases "mentally incompetent," "mental competency," and "mental incompetency" for the words "insane," "sanity," and "insanity" throughout chapter 6.  (Stats. 1974, ch. 1511.)  But in an apparent oversight, the Legislature did not amend section 1023 to do the same.

17

1023 "to make it clear that the psychotherapist-patient privilege does not apply when the defendant [in an adult criminal proceeding] raises the issue of his [competency] at the time of trial." (Cal. Law Revision Com. com., 29B pt. 3B West's Ann. Evid. Code (2009 ed.) foll. § 1023, p. 43.) Thus, whenever a defendant's counsel raises the issue of competency by declaring a doubt, that counsel has "request[ed]" a competency hearing for purposes of section 1023. And because an incompetent defendant cannot "act in his own best interests" (*Hill*, *supra*, 67 Cal.2d at p. 114, fn. 4) and cannot, in any meaningful way, declare a doubt as to his own competency (see, *ante*, at pp. 15-16), we must deem that request to be a request by the defendant for purposes of section 1023 (see *Baqleh*, *supra*, 100 Cal.App.4th at p. 500 & fn. 6). Indeed, a contrary interpretation would render section 1023 wholly inoperative. (See *Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715–716 [precluding "judicial construction that renders part of the statute 'meaningless or inoperative' "].)

Apparently recognizing this conundrum, T.M. contends that section 1023 "cannot be meaningfully applied" because only a court may initiate a competency proceeding. (See *People v. Pokovich* (2006) 39 Cal.4th 1240, 1245 (*Pokovich*) ["competency proceedings are initiated by the trial court, not the defendant"].) T.M., however, ignores the relevant language of section 1023—which does *not* require that the defendant initiate the competency proceeding. Rather, section 1023 only requires that the competency proceeding be "initiated *at the request* of the defendant. . . ." (Italics added.) In other words, the defendant need only request the proceeding for section 1023 to apply. Thus, the fact that the trial court,

18

rather than the defendant, initiates the competency proceeding has no bearing on the applicability of section 1023.

Because section 1023 renders the psychotherapist-patient privilege inapplicable whenever a defendant's counsel declares a doubt as to the defendant's competency, the same must be true under section 1016 whenever a minor's counsel does the same in a juvenile wardship proceeding. This is because, as conceded by T.M. and explained in the Law Revision Commission comment to section 1023, "section[s] 1016 and 1023 are largely coextensive with one another." (See Cal. Law Revision Com. com., 29B pt. 3B West's Ann. Evid. Code, *supra*, foll. § 1023, at p. 43 [§ 1023 "probably is unnecessary because the exception provided by Section 1016 is broad enough to cover this situation"].)

A comparison of the relevant language in sections 1016 and 1023 confirms this. A person's mental or emotional condition is always at issue in a competency proceeding. (See Pen. Code, § 1367, subd. (a) ["A defendant is mentally incompetent . . . if, as a result of a *mental health disorder or developmental disability*, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner" (italics added)]; Welf. & Inst. Code, § 709, subd. (a)(2) ["Incompetency may result from the presence of any condition or conditions, including, but not limited to, *mental illness, mental disorder, developmental disability, or developmental immaturity*" (italics added)].) Thus, when a competency proceeding is "initiated at the request of the defendant in a criminal action" (§ 1023), the issue of that defendant's "mental or emotional condition" has also been "tendered by: [¶] . . . [t]he patient" (§ 1016). And because section 1016 subsumes section 1023 (see Cal. Law Revision Com.

19

com., 29B pt. 3B West's Ann. Evid. Code, *supra*, foll. § 1023, at p. 43), when a defendant's counsel declares a doubt as to the defendant's competency, that defendant has "tendered" that issue for purposes of section 1016 (see *Baqleh*, *supra*, 100 Cal.App.4th at p. 500, fn. 6). By parity of reasoning, a minor has "tendered" the issue of his "mental or emotional condition" for purposes of section 1016 whenever the minor's counsel declares a doubt as to the minor's competency.

"Our review of the relevant policy considerations provides additional support." (*Sinohui*, *supra*, 28 Cal.4th at p. 213.) "The policy that a mentally incompetent person not be subjected to a trial has its roots in our constitutional, statutory, and common law. It is thus a policy of ancient and venerable origin, founded on the view that to subject the mentally incompetent to trial or to punishment is inhumane and cruel." (*Pokovich*, *supra*, 39 Cal.4th at p. 1250.) Because " '[c]ompetence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial' " (*Cooper v. Oklahoma* (1996) 517 U.S. 348, 354), there is a strong public policy interest in ensuring that courts have access to *all* information relevant to the competency determination. As noted in the legislative history of Welfare and Institutions Code section 709, this includes the mental health records of a minor: " 'research indicates that . . . mental health history and severity of diagnosis . . . are relevant in determining a minor's trial competency . . . .' " (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 2212 (2009—2010 Reg. Sess.) as amended Apr. 8, 2010, p. 7; see also Welf. & Inst. Code, § 709, subd. (b)(3) ["The expert shall personally . . . review all of the available records provided, including . . . mental health . . . records"].) Giving the expert appointed by

20

the court to evaluate a minor's competency access to the minor's mental health records therefore "fits nicely" with the relevant policy considerations. (*Sinohui*, at p. 217.)

Contrary to T.M.'s assertion, Welfare and Institutions Code section 317, subdivision (f) does not support a contrary conclusion. That section states in relevant part, "Either the child or *counsel for the child . . .* may invoke the psychotherapist-client privilege" in a juvenile dependency proceeding. (Italics added.) T.M. argues that section 1016's failure to include a similar reference to "[t]he patient['s]" counsel means that the Legislature did not intend for section 1016 to apply when the minor's counsel tenders the issue of the minor's competency. But Welfare and Institutions Code section 317, subdivision (f) assumes that "the child" is capable of acting in his or her best interest by personally invoking the psychotherapist-patient privilege. Indeed, it only allows "the child" to "waive" the privilege and expressly prohibits the child's "counsel" from doing so. (Welf. & Inst. Code, § 317, subd. (f).) Thus, the "counsel for the child" cannot be deemed to be "the child" for purposes of invoking the psychotherapist-patient privilege under Welfare and Institutions Code section 317, subdivision (f).

By contrast, an incompetent minor is not capable of acting in his or her best interest (*Hill*, *supra*, 67 Cal.2d at p. 115, fn. 4) and cannot waive the privilege (*Pate*, *supra*, 383 U.S. at p. 384). Thus, a minor's counsel may and should be deemed the minor for purposes of section 1016 because that minor can *only* declare a doubt as to his or her competency through his or her counsel. (*Baqleh*, *supra*, 100 Cal.App.4th at p. 500, fn. 6.) It is therefore understandable why the Legislature did not use the more explicit language found in Welfare & Institutions Code section 317, subdivision (f) in section

21

1016.  (See *People v. Connor* (2004) 115 Cal.App.4th 669, 685 [Legislature's failure to use "more explicit language" does not "reveal a legislative intent *not* to accomplish a particular result" because "the legislative history" and "structure of the statute" suggest otherwise].)

For the same reason, T.M.'s reliance on *People v. Blackburn* (2015) 61 Cal.4th 1113 is misplaced.  *Blackburn* construed a provision of the Mentally Disordered Offender Act, requiring that "[t]he court . . . advise the person of the right to be represented by an attorney and of the right to a jury trial."  (Pen. Code, § 2972, subd. (a)(1).)  In concluding that the court must advise " 'the person,' " and "not his or her attorney," of those rights, our high court never questioned whether that person could understand his or her rights and act in his or her best interest.  (*Blackburn*, at p. 1123.)  The same is not true for an incompetent minor who cannot act in his or her best interest (see *Hill*, *supra*, 67 Cal.2d at p. 115, fn. 4) or waive the issue of his or her competency to stand trial (*Pate*, *supra*, 383 U.S. at p. 384).

Finally, our interpretation of section 1016 does not conflict with "[t]he strong public policy of confidentiality of juvenile proceedings and records" in light of other limits on the disclosure and use of any mental health records disclosed to the court-appointed expert.  (*In re Keisha T.* (1995) 38 Cal.App.4th 220, 231.)

First, any mental health records disclosed to the court-appointed expert are still protected by other statutes that limit their disclosure, including Welfare and Institutions Code sections 676 and 827.

Second, section 1016 compels "disclosure of only those matters directly relevant to" the competency evaluation.  (*Lifschutz*, *supra*, 2 Cal.3d at p. 431.)  Consistent with this limitation, the juvenile court only compelled the

22

disclosure of T.M.'s mental health records *to the court-appointed expert*. That expert, in turn, may reveal in his written report and testimony only the portions of those records relevant to the competency evaluation. And to the extent that the records may be disclosed to any other participant in the competency proceeding, the juvenile court may and should take any other "necessary precautions to protect the confidentiality of" the records. (*Id.* at p. 437, fn. 23.)

Third, no statements made by T.M. "to the appointed expert during [his] competency evaluation" or "any fruits of these statements" may "be used in any other hearing against" him "in either juvenile or adult court." (Welf. & Inst. Code, § 709, subd. (b)(5); see also *Pokovich*, *supra*, 39 Cal.4th at p. 1254 ["statements that [the] defendant made during his mental competency evaluation" may not be used for impeachment]; *People v. Arcega* (1982) 32 Cal.3d 504, 522 [neither the statements made by the defendant during his competency evaluation nor the fruits of those statements may be used to establish the defendant's guilt].)

Considered altogether, these limits on disclosure and use of a minor's mental health records in a juvenile competency proceeding "may provide a measure of reassurance to the prospective patient." (*Lifschutz*, *supra*, 2 Cal.3d at p. 427.) They also ensure that the minor's constitutional right to privacy, to the extent it is implicated by the psychotherapist-patient privilege, is not infringed. (See *id.* at p. 423 ["under a properly limited interpretation, the litigant-patient exception to the psychotherapist-patient privilege . . . does not unconstitutionally infringe the constitutional rights of privacy of either psychotherapists or psychotherapeutic patients"].)

Accordingly, we hold that, under section 1016, the psychotherapist-patient privilege does not bar the disclosure of a minor's mental health records to the court-appointed expert in a competency proceeding where, as here, the minor's counsel declares a doubt as to the minor's competency.

## DISPOSITION

T.M.'s writ petition is denied. The partial stay of the juvenile court's order shall be dissolved upon issuance of the remittitur. (Cal. Rules of Court, rule 8.490(d).)

CHOU, J.

WE CONCUR:

JACKSON, P.J.
BURNS, J.

*T.M. v. Superior Court* (A169823P)

Contra Costa County Superior Court

Hon. Wade Rhyne

Counsel:

Ellen McDonnell, Public Defender, Joni Spears, Assistant Public Defender and Jeremy Price, Deputy Public Defender for Petitioner.

No Appearance for Respondent.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffery M. Laurence, Senior Assistant Attorney General, Bridget Billeter, Supervising Deputy Attorney General, Linda M. Murphy Deputy Attorney General on behalf of Real Party in Interest