Filed 11/19/24  P. v. Smith CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANDREW DEWANE SMITH,<br><br>    Defendant and Appellant. | D082194<br><br><br>(Super. Ct. No. SCN033462) |

APPEAL from an order of the Superior Court of San Diego County, David G. Brown, Judge.  Affirmed.

Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Senior Assistant Attorney General, Robin Urbanski, Supervising Deputy Attorney General, Felicity Senoski and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

Andrew Dewane Smith appeals from the denial of his petition for resentencing under Penal Code[1] section 1172.6 (formerly section 1170.95). After issuing an order to show cause and holding an evidentiary hearing, the trial court concluded Smith was not entitled to resentencing relief.

Smith contends the court erroneously failed to exclude from evidence his statements made at an initial parole suitability hearing, and he was entitled to resentencing because the People otherwise failed to prove beyond a reasonable doubt that he was guilty of attempted murder under the current law. We affirm the order.

FACTUAL AND PROCEDURAL SUMMARY

In 1996, Smith pleaded guilty to two counts of premeditated attempted murder of Ruben G. and Jesus A. (§§ 664, 187, subd. (a)) and admitted the truth of allegations that he personally used a firearm (§12022.5, subdivision (a)) and personally inflicted great bodily injury (§ 12022.7, subdivision (b)). The parties stipulated that the factual basis for the plea was the preliminary hearing transcript.[2]

---

[1]    Undesignated statutory references are to the Penal Code.

[2]    Smith does not include a statement of facts surrounding the attempted murders in his opening brief. As he points out, the preliminary hearing transcript was not introduced into evidence. The People provide a brief factual summary taken from the parole hearing transcript. We likewise do not rely on the preliminary hearing facts in this opinion to determine the merits of Smith's section 1172.6 petition. Rather, we summarize Smith's statements from the plea bargaining hearing and the parole hearing for context only.

In 1996, the trial court sentenced Smith to two terms of life with the possibility of parole and a consecutive determinate term of 18 years for the firearm and great-bodily-injury enhancements.

In April 2022, Smith filed a petition for resentencing under section 1172.6.  The court appointed counsel for him and set a briefing schedule.

At the start of the evidentiary hearing, the court acknowledged reading the parties' papers, including the parole hearing transcript.

The prosecution argued Smith was ineligible for resentencing, claiming he directly committed the attempted murders and acted with malice aforethought.  The People submitted a transcript of Smith's statements at his

---

In the plea bargaining proceedings, Smith agreed his guilty plea was given freely and voluntarily.  He pleaded guilty to "willfully and unlawfully attempt[ing] to murder" two individuals, and agreed the offenses were "willful, deliberate and premeditated" under section 189.  He also admitted as to both crimes that he, "with the intent to inflict . . . injury, personally inflicted great bodily injury" within the meaning of section 12022.7, subdivision (b).

parole hearing. Over Smith's objections, the court admitted the transcript into evidence.[3]

The People argued against resentencing: "[W]e would ask the court to deny the petition based on both the parole transcript as well as the dismissed plea admitting the [enhancement allegations]. We're not going to deny that the parole transcript is heavily weighing . . . in favor of denying [the petition], and that is basically our argument, is based upon that given that there wasn't an accomplice here and the [section] 245[4] that's alleged. But given [ ] Smith's statement and the parole transcript . . . where he admits to also being the shooter as well as an intent to kill, which is superfluous once you find that he is the actual shooter, I think the petition must be denied pursuant to [*People v.*] *Harden* [(2022) 81 Cal.App.5th 45]."

---

[3] At the parole hearing, Smith was represented by counsel. A commissioner asked Smith, "Why did you shoot at these guys?" Smith replied, "Truthfully, the day that happened they threw up a gang sign to me and at that time me trying to be impressive [*sic*], . . . so I did turn around we drove back and I did shoot." Smith added, "I was the only one in the car with the gun." A commissioner asked Smith, "What was your intent?" Smith admitted, "Oh. I was bound to shoot, to kill them." Pointing out that Smith was on parole at the time and therefore ineligible to carry a gun, a commissioner asked Smith, "Why did you have that gun?" He replied, "To hurt somebody." When pressed, "Why?" Smith replied, "To kill." A commissioner again asked, "Why?" Smith answered, "Because I was a gang member and I was living the life of other gang member [*sic*] and any time any situation that would have arose [*sic*] I would have used the gun. That was one of the reasons why I had it." The commissioner asked Smith if he had used drugs or alcohol before the shooting, and he denied doing so. The commissioner clarified, asking whether Smith was "stone-cold sober" when he committed the shootings. Smith replied, "Yes sir."

[4] The prosecutor likely misspoke because the section 245 counts in the information, dealing with assault with a deadly weapon or force likely to produce great bodily injury, were dismissed as a part of Smith's plea bargain.

4

Defense counsel argued: "[E]ssentially the People are relying on a post-conviction confession alone and have not submitted independent evidence to corroborate that confession. If any such evidence exists beyond, you know, the plea and the parole transcript, which are both just my client's words alone, that evidence is not before this court. And so the People have not met their burden to prove beyond a reasonable doubt that my client could be convicted of murder [*sic*]."

The trial court agreed with the People's arguments and on that basis denied Smith's resentencing petition.

DISCUSSION

I. *Admissibility of Parole Hearing Transcript*

Relying on *People v. Coleman* (1975) 13 Cal.3d 867 (*Coleman*), Smith contends the court prejudicially erred by failing to exclude his statements made at the parole hearing "under the judicially devised exclusionary remedy of *Coleman*." He argues *Coleman* and its progeny extended immunity to situations where there is a compulsive sanction against the exercise of the privilege against self-incrimination and where policy considerations favor full disclosure from the person providing testimony. He further argues that using an inmate's parole hearing testimony at a subsequent criminal proceeding regarding the same crime will either chill the speech required of inmates to establish suitability for parole or require an inmate to inculpate himself.

It is well settled that a defendant's testimony at a parole hearing falls within the ambit of " 'new or additional evidence.' " (*People v. Mitchell* (2022) 81 Cal.App.5th 575, 586, (*Mitchell*); *People v. Myles* (2021) 69 Cal.App.5th 688, 703 (*Myles*).) Claims about the erroneous admission of evidence are usually reviewed for an abuse of discretion. (*People v. Duran* (2022) 84 Cal.App.5th 920, 927-928 (*Duran*).) However, whether use immunity exists

5

and whether a statement is involuntary within the meaning of due process are questions of law we review de novo.  (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 383, fn. 8  [questions of law on undisputed facts]; *People v. McCurdy* (2014) 59 Cal.4th 1063, 1086 [involuntariness].)

We agree with the other Courts of Appeal that have addressed this issue and conclude that *Coleman* use immunity should not be extended to bar the use of a defendant's testimony at a parole hearing in a later evidentiary hearing held under section 1172.6.  (*Duran, supra,* 84 Cal.App.5th at pp. 930-932; *Mitchell, supra,* 81 Cal.App.5th at pp. 586-590; *People v. Anderson* (2022) 78 Cal.App.5th 81, 93 (*Anderson*); *Myles, supra,* 69 Cal.App.5th at pp. 705-706.)

In *Coleman*, the California Supreme Court held that a defendant's testimony at a probation revocation proceeding was inadmissible against him at a later trial to prove guilt on the related criminal charges.  (*Coleman, supra,* 13 Cal.3d at pp. 889-890.)  The court reasoned that a defendant should not be forced to choose between the privilege against self-incrimination at trial and the right to be heard at a probation revocation hearing.  (*Id.* at p. 878.)  *Coleman* expressed its holding in terms of a judicially created exclusionary rule.  (*Id.* at p. 889.)  However, later cases have treated *Coleman* as creating a limited species of use immunity grounded in California's constitutional guarantee against self-incrimination.  (See *Ramona R. v. Superior Court* (1985) 37 Cal.3d 802, 808-809.)  In either case, the basis for the decisions remains the same two policies that underlie the privilege against self-incrimination: first, the policy that requires the state to carry its burden of proving guilt without the defendant's compelled personal assistance; and second, the policy against subjecting a defendant to the

6

" 'cruel trilemma of self-accusation, perjury or contempt.' " (*Coleman,* at p. 878; see also *id.* at pp. 875-876.)

The rule established in *Coleman supra,* 13 Cal.3d 867 has been extended to contexts other than probation hearings, to preclude the prosecution's use of a defendant's statements as substantive evidence of guilt when one constitutional right is pitted against another. (See, e.g., *People v. Ledesma* (2006) 39 Cal.4th 641, 694 [privileged disclosures in habeas corpus proceeding based on ineffective assistance of counsel did not waive attorney-client privilege for purpose of retrial]; *Ramona R. v. Superior Court, supra,* 37 Cal.3d at pp. 810-811 [statements made by a minor to a probation officer and during a fitness hearing are inadmissible as substantive evidence against minor at subsequent trial]; *Baqleh v. Superior Court* (2002) 100 Cal.App.4th 478, 502-503 [statements made during a court-compelled mental examination cannot be used in a subsequent trial].) The reasoning underlying cases expanding *Coleman* use immunity to those additional contexts remains "limited to situations where a defendant's prior statements might be later used against him in a manner *that offends the privilege against self-incrimination.*" (*Duran, supra,* 84 Cal.App.5th at p. 929; see also, *People v. Ledesma, supra,* 39 Cal.4th at pp. 692, 694-695 [*Coleman* and its progeny are cases in which the courts have granted use immunity when "it would be unfair to require the defendant to choose between maintaining a privilege and asserting other important rights"].) Smith makes no claim of privilege other than his privilege against self-incrimination. Thus, the authorities on which he relies require he demonstrate he had a constitutional privilege against self-incrimination in his section 1172.6 resentencing hearing in order to be entitled to *Coleman* use immunity. (*Anderson, supra,* 78 Cal.App.5th at p. 93.) As we explain, he has not met this burden.

7

"The Fifth Amendment privilege against self-incrimination protects persons from being compelled by ' "governmental coercion" ' to serve as witnesses against themselves in ' "any criminal case." ' " (*Myles, supra,* 69 Cal.App.5th at p. 705.) "By its plain text, the privilege applies only during a 'criminal case' or 'cause.' [Citations.] Once a defendant's 'sentence has been fixed and the judgment of conviction has become final,' the 'general rule' is that 'there can be no further incrimination' and hence 'no basis for the assertion of the privilege.' " (*Duran, supra,* 84 Cal.App.5th at p. 930; *Anderson, supra,* 78 Cal.App.5th at p. 93.)

The section 1172.6 evidentiary hearing is not a criminal prosecution, subsequent retrial, or a new sentencing. (*Mitchell, supra,* 81 Cal.App.5th at p. 588.) Rather, it is a postconviction proceeding based on an act of lenity by the Legislature. (*Myles, supra,* 69 Cal.App.5th at pp. 705-706.) "Because a sentence modification under section [1172.6] is an act of lenity and not a criminal trial, the wrongful admission of evidence does not implicate defendant's constitutional rights under the Fifth Amendment." (*Id.* at p. 706.) Further, during the hearing, the final judgment of conviction remains intact. (*Duran, supra,* 84 Cal.App.5th at p. 931.) "This is no doubt why the panoply of rights that attach at trial do *not* apply during a section 1172.6 evidentiary hearing, such as the right to a jury trial or the protection against double jeopardy. [Citation.] As a result, use of a defendant's prior statements during such an evidentiary hearing does not implicate the privilege against self-incrimination, and *Coleman's* core rationale—and hence its holding—is not implicated." (*Duran,* at p. 931; contra, *Mitchell, supra,* 81 Cal.App.5th at pp. 604-605 (dis. opn. of Stratton, J.).)

Smith also asserts that parole hearings are coercive in nature, therefore his testimony at the parole hearing was involuntary. He claims

8

that because an inmate's insight into his commitment offense is such an important factor in determining his suitability for release, it is unfair to penalize an inmate's exercise of his right to be heard at the parole hearing by allowing the prosecution to use those statements at a subsequent criminal proceeding focused on establishing the inmate's criminal liability for that same crime. Otherwise, he claims, the inmate is forced to choose between his right to be free from self-incrimination and the possibility of release on parole.

Generally, when faced with a claim of involuntary incriminating statements, a reviewing court " ' " 'must examine the uncontradicted facts surrounding the making of the statements to determine independently whether the prosecution met its burden and proved that the statements were voluntarily given without previous inducement, intimidation or threat.' " ' " (*People v. McWhorter* (2009) 47 Cal.4th 318, 346.) In doing so, we " ' " 'accept [the] version of events which is most favorable to the People, to the extent that it is supported by the record.' " ' " (*Ibid.*)

At a parole hearing, "[t]he [Parole] Board shall not require an admission of guilt to any crime for which the prisoner was committed. A prisoner may refuse to discuss the facts of the crime in which instance a decision shall be made based on the other information available and the refusal shall not be held against the prisoner." (Cal. Code Regs., tit. 15, § 2236; see § 5011, subd. (b).) Nor can parole "be conditioned on admission of guilt to a certain version of the crime." (*Myles, supra,* 69 Cal.App.5th at p. 706; § 5011, subd. (b); Cal. Code Regs., tit. 15, § 2236.)

In light of the above law, we conclude Smith has not shown that his parole hearing testimony was involuntary. Smith does not point to any evidence showing his testimony at the parole hearing was compelled, and the

9

record does not support such a claim. As stated, counsel represented him at that hearing. That he might have had an incentive to admit to the offenses of conviction does not suggest his will was overborne by official coercion, such that his testimony was involuntary. In sum, we conclude that *Coleman's* use immunity did not extend to exclude Smith's testimony at the parole hearing from the section 1172.6 evidentiary hearing.

## II. *Sufficiency of the Evidence Supporting the Petition*

Smith argues his guilty plea is not evidence he had the necessary intent for an attempted murder conviction under current law; his admissions to the enhancements do not preclude section 1172.6 relief; and the prosecution did not submit to the court an appellate opinion setting out the facts of this case or a preliminary hearing transcript. Based on these claims, Smith contends: "The prosecution failed to prove beyond a reasonable doubt that [he] was guilty of murder under the amended law. Therefore, the attempted murder charges should be vacated and [he] should be resentenced on the remaining charges pursuant to section 1172.6, subdivision (d)(3)." (Bolding omitted.)

Senate Bill No. 1437 became effective January 1, 2019 (Stats. 2018, ch. 1015). It substantially changed the law governing "murder liability for those who were neither the actual killers nor intended to kill anyone, including certain individuals formerly subject to punishment on a felony-murder theory." (*People v. Strong* (2022) 13 Cal.5th 698, 707.) In part, it "imposed a new requirement that, except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder. (§ 188, subd. (a)(3).) 'Malice shall not be imputed to a person based solely on his or her participation in a crime.'" (*People v. Curiel* (2023) 15 Cal.5th 433, 448-449.) The statute also created "a procedural mechanism for those convicted

10

of murder under prior law to seek retroactive relief." (*People v. Wilson* (2023) 14 Cal.5th 839, 869; see *Curiel,* at p. 449; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); Stats. 2018, ch. 1015.)

Effective January 1, 2022, the Legislature clarified that Senate Bill No. 1437's changes and procedure for relief applied to individuals convicted of attempted murder under the natural and probable consequences doctrine. (Stats. 2021, ch. 551, § 1, subd. (a); *People v. Lezama* (2024) 101 Cal.App.5th 583, 588; *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 931; *People v. Saibu* (2022) 81 Cal.App.5th 709, 747.) Section 1172.6, subdivision (a) now reads in part: "A person convicted of . . . attempted murder under the natural and probable consequences doctrine . . . may file a petition with the court that sentenced the petitioner to have the petitioner's . . . attempted murder . . . conviction vacated and to be resentenced on any remaining counts."

A petition under this procedure must contain a declaration that all requirements for section 1172.6 eligibility are met (§ 1172.6, subd. (b)(1)(A)), including that: "[t]he petitioner could not presently be convicted of . . . attempted murder because of changes to . . . Section 188 . . . made effective January 1, 2019." (*People v. Strong, supra*, 13 Cal.5th at p. 708.) The trial court must then determine if the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1172.6, subds. (a)-(c); accord, *Strong*, at p. 708.) " ' "[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Lewis, supra*, 11 Cal.5th at p. 971; see *People v. Curiel, supra*, 15 Cal.5th at p. 460.)

If the court issues an order to show cause, within 60 days the court must then hold an evidentiary hearing to determine whether to vacate the

11

murder, attempted murder, or manslaughter conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subds. (c), (d)(1).) At this hearing, either party may present new evidence and the prosecution bears the burden of proving the petitioner could still be convicted beyond a reasonable doubt. (§ 1172.6, subd. (d)(3).)

On appeal from an order denying a petition under section 1172.6, we review the superior court's factual findings for substantial evidence. (*People v. Hill* (2024) 100 Cal.App.5th 1055, 1066; *People v. Montanez* (2023) 91 Cal.App.5th 245, 270.) In so doing, we " ' " ' "examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the necessary fact] beyond a reasonable doubt." ' . . . While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." ' " (*People v. Pittman* (2023) 96 Cal.App.5th 400, 414; see *Montanez*, at pp. 270-271.) " ' " 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.' " ' " (*People v. Navarro* (2021) 12 Cal.5th 285, 339; see *People v. Brooks* (2017) 3 Cal.5th 1, 57; *Montanez*, at p. 271.)

We conclude Smith's admissions in his plea bargaining proceedings and his testimony at the parole hearing provided sufficient basis for the court to deny his section 1172.6 petition for resentencing relief. Neither the charges against him nor his plea referenced a natural and probable consequences theory. His ineligibility is based on his plea to attempted murder *combined*

12

with his admission to the firearm and personal injury enhancements. Where he pleaded guilty under oath that he "personally inflicted great bodily injury" within the meaning of section 12022.7, subdivision (b), his plea was to being the person who actually inflicted the injuries to the victims, making him ineligible for resentencing as a matter of law. (Accord, *Harden, supra,* 81 Cal.App.5th at p. 56 & fn. 9.) "The natural meaning of 'personally inflicted' is that the defendant [himself] inflicted the injury." (*Id*. at p. 55.)

Further, as summarized above, Smith stated at his parole suitability hearing that he was sober when he, the only passenger in the vehicle who carried a gun, personally shot at the victims because they flashed a rival gang's signs. Smith admitted he harbored an intent to kill them. Combined, Smith's own parole hearing testimony and plea admissions refute his petition's allegations, and he is not entitled to section 1172.6 relief as these admissions leave no room for a theory of natural and probable cause basis for his attempted murders. (Accord, *Myles, supra,* 69 Cal.App.5th at p. 711 ["the natural and probable consequences doctrine presupposes that defendant aided and abetted another principal in the commission of a target crime. [Citation.] Defendant does not identify a target offense on which a natural and probable consequences theory could have been based. Relief is available under section [1172.6] only when the conditions enumerated in the statute apply . . . . Defendant does not explain how the prosecution could have relied on a natural and probable consequences theory without any evidence showing defendant aided and abetted the perpetration of a target offense"].)

## DISPOSITION

The order is affirmed.

O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DO, J.